ASHLEY ET AL. VS. TURLEY AND FOUR OTHER CASES.

A claim to land by virtue of a Spanish grant and confirmation, described as follows: "30,000 arpents 60 miles above the Osage, on the south side of the Missouri river, in which quantity should be comprised, the river a La Mine, and also the salt springs which he designed to work," &c., is not sufficiently specific to bring it within the reservations of the act of Congress of February 15, 1811, so as to prevail against a New Madrid loca-tion.   The claims reserved by the act of 1811, were such as had a fixed locality, or could be reduced to a certainty by a survey.

## ERROR to Cooper Circuit Court.

### STATEMENT OF THE CASE.

These five cases were actions of ejectment brought in the Circuit Court of Cooper county by the plaintiffs in error against the respective defendants.   They are included in one state-ment, as the case on the part of the plaintiffs is the same in all, and on the part of the de-fendants there is no material difference in the defences set up in each case.

The plaintiffs claim title under Chouteau's Spanish grant of 30,000 arpents, confirmed by the act of Congress of the 4th of July, 1836.   The defendants claim title under New Madrid locations, by virtue of the act of Congress of the 17th of February, 1815, and they produced New Madrid patents for all the locations except one, and this is the only difference in the defence in any of the cases.

Ashley, et al. vs. Turley and four other cases.

Upon the trial the plaintiff read in evidence—

1st. A certified copy of the original Spanish grant of 30,000 arpents made to Pierre Chouteau by Carlos Dehault Delassus, 20th Nov., 1799—certified to be a true copy of the original by the Recorder of land titles in the State of Missouri, together with a true translation of the same into the English language. This document consists of a petition by Chouteau for a grant of 30,000 arpents, on the south side of the Missouri river, sixty miles above the Osage river, so as to comprise in the quantity the river a La Mine, and a concession thereof by the said Delassus, which was registered by order of the Lieutenant Governor under the Spanish authorities, and was afterwards filed with the Recorder of Land Titles for the Territory of Louisiana.

2nd. The plaintiffs then read in evidence the proceedings had before the board of commissioners for the adjustment of private land claims in the State of Missouri, which commences with a notice by Chouteau to Frederick Bates, Recorder of Land Titles, on the 26th of May, 1808, of his concession as being on record in his office, and contain the action of the board of commissioners on his claim, ending with the decision of the board that the claim ought to be confirmed, together with the certificate of the Recorder of Land Titles at St. Louis, in the State of Missouri, that the said proceedings were a full and complete transcript of the documents, papers and proceedings had relating to the claim of Pierre Chouteau therein named, on file and of record in his office—that said claim was included in the transcript of favorable decisions, transmitted by the Recorder of Land Titles in the State of Missouri, and the two commissioners appointed with him to the commissioner of the General Land Office, under an act of Congress, entitled "An act for the final adjustment of private land claims in Missouri, approved 9th day of July, 1832;" and "An act supplemental thereto, approved 2d day of March, 1833;" the said claim being in said transcript numbered eighty-three.

3rd. The plaintiff then read in evidence the original concession to Pierre Chouteau, and the endorsements thereon of registry and record, with the depositions of Julius Demun and Mary P. Leduc, proving the signatures of Chouteau and the Soulards, and official characters of the Soulards, the one being Lieutenant Governor of Upper Louisiana, and the other late Surveyor General of same, and the date of the concession, 20th Nov. 1799; and proving that the translated copy of the grant above referred to, being marked J. D. in the margin of the record, is a true translation of the original.

4th. The plaintiffs then read in evidence a certified copy by the Commissioner of the General Land Office of claim No. 83—Peter Chouteau's—from the report of the Recorder and Commissioners under the acts of Congress of the 9th July, 1832, and 2nd March, 1833, being included in the first c'ass in said report, which report was submitted to Congress in 1834; which said copy is certified to be a true extract from printed vol. 5, in his office, of the documents, Legislative and Executive, of the Congress of the U. S., in relation to the public lands.

5th. The plaintiffs then read in evidence a certified copy of a survey of Chouteau's grant as confirmed by the act of Congress of the 4th of July, 1836, made by the Surveyor General, showing that the lands in controversy are included within the boundaries of the survey.

6th. The plaintiffs then read in evidence, from a printed volume purporting to be printed by Blair & Rives, for the House of Representatives of the Congress of the U. S. at the first session of the 24th Congress, and entitled "Private land claims in Missouri," the report of the Recorder and Commissioners under the acts of Congress of the 9th July, 1832, and 2nd March, 1833, transmitted by the Recorder and Commissioners to the Commissioner of the General Land Office, and by him laid before Congress and read thereat as evidence; claim 83 being the same as the copy above referred to as certified by the Commissioner of the General Land Office, and therefore not again copied into the bill of exceptions. This report is the same referred to in the act of Congress of the 4th July, 1836, confirming this as one of the claims.

7th. The plaintiffs then read in evidence the act of Congress of the 4th of July, 1836, referring to the said transcript of favorable decisions, transmitted to the Commissioner of the

Ashley, et al. vs. Turley and four other cases.

General Land Office as aforesaid and by him laid before Congress and confirming the same, Chouteau's claim No. 83, being one.

8th. The plaintiffs then read in evidence a patent from the U. S. to Pierre Chouteau or his legal representatives for the 30,000 arpents as confirmed, giving the boundaries thereof, bearing date 22nd of August, 1837.

9th. The plaintiffs then read in evidence a deed from the said Pierre alias Peter Chouteau to Wm. H. Ashley, the ancestor of the plaintiffs, for the said 30,000 arpents, bearing date 6th of Oct. 1836, with the certificates of acknowledgment and record endorsed.

10th. The plaintiffs proved that the said Ashley died before the commencement of the suits, leaving the plaintiffs in being his only heirs at law, and that the defendants were in possession of the lands sued for, at and before the commencement of the suits.

All the documentary evidence was given with an agreement that after all the evidence should be closed on both sides, the defendants should be at liberty to object to the competency or legality of the said evidence.

The plaintiffs then rested their case.

The defendants then introduced their New Madrid locations as follows :

1st. Certificate No. 259, dated 20th Feb'y, 1817, in favor of William Bomlette, or his legal representatives—survey thereon No. 2613, dated 10th Jan'y, 1820—and patent from the U. S. dated 23rd July, 1820.

2nd. New Madrid patent to James Norris, or his legal representatives for survey 2720, dated 1st day of July, 1828.

3rd. New Madrid certificate, No. 303, to Thomas Brooks, dated 26th May, 1817, located June 9th, 1817. Survey of same, No. 2600—patent thereon 3rd July, 1820. Certificate No. 474 to Francis Pasquier, dated Nov. 30th, 1818, located 1st Feb'y 1819—patent thereon 1st June, 1820. Certificate 476, to Andrew Wilson, dated Nov. 30th, 1813, located 1st Feb'y, 1819. Survey of same No. 2883, dated 10th Jan'y, 1820, patent certificate for same, dated 28th June, 1820.

The defendants then proved that the several tracts of land embraced in the said patents and patent certificates, were the only tracts of land mentioned in the declarations of which they had possession, and that they had been in possession thereof for several years prior to the commencement of the suits under the titles aforesaid

Here the defendants rested their defence, and this being all the evidence on either side, the court thereupon, at the instance of the defendants, decided and declared that the documentary evidence given by the plaintiffs was not competent and legal evidence to show a right of recovery in the plaintiffs in this action to the land in controversy, and that the evidence given by the defendant, if true, was sufficient in point of law to defeat any right of recovery in the plaintiffs under the act of Congress of the 4th of July, 1836, or under the documentary evidence of title given by the plaintiff; and to this opinion of the court the plaintiff excepted; and thereupon the court, sitting as a jury, found verdicts for the defendants, and the plaintiffs filed their motions to set the same aside and to grant them new trials, alleging as reasons therefor the aforesaid opinion of the court; but the court overruled the motions and the plaintiffs excepted, and have brought the cases here by writs of error for relief.

ADAMS, for plaintiffs in error.

1. The confirmation of Chouteau's Spanish grant by the act of Congress of the 4th of July, 1836, under which the plaintiff's claim title, is a good legal title against the the U. S., and must prevail against the title set up by the defendants under the New Madrid locations, unless it is shown that the New Madrid locations were made in conformity with the laws of the U. S. See act of Congress, 2nd March, 1805; 2nd Story's Laws U. S. 966, chap. 86; act 28th Feb'y, 1806, chap. 11, sec. 3; act 21st April, 1806, chap. 39, sec. 3; act 3rd March, 1807; 2d Story's Laws U. S. 1059; act 15th Feb'y, 1811; 2nd Story's Laws U. S., 1178, chap. 81, sec.

10; act 3rd March, 1811, same book 1197, chap. 113, sec. 10; act 26th May, 1824, act 21th May, 1828; act 9th July, 1832; act 2d March, 1833; act 4th July, 1836; Stoddard vs. Chambers, 2d Howard's Rep. 284; Barry vs. Gamble, 3 Howard Rep. 53–4.

2nd. The title set up by the defendants, under the New Madrid locations, is not good even against the U. S., and cannot prevail against the title under which the plaintiffs claim, because the locations were not made in conformity with the laws of the U. S., being made upon lands included in Chouteau's grant, "the sale of which was not authorized by law," but which had been expressly reserved from sale. See New Madrid act of 1815; 2nd Story's Laws 1500, chap. 198; Stoddard vs. Chambers, 2 Howard Rep. 284; Barry vs. Gamble, 3 Howard Rep. 53–4; Opinions of Attorney Generals Wirt and Butler, and the acts of Congress above referred to. Bissell vs. Penrose, decided by the Supreme Court U. S., at the December term, 1849.

3d. The New Madrid patents and patent certificate were issued without authority and are void in law, and their validity may be enquired into in this action.

4th. The 2nd section of the act of Congress of the 4th July, 1836, presupposes that the disposition therein referred to, of any of the land confirmed by the 1st section, was such a disposition as was good and valid under the existing laws of the U. S. when the same was made.

5th. Chouteau's grant was not only reserved from sale by the acts of Congress referred to, but being private property, was protected by treaty when this country became a part of the U. S., and as such, would remain inviolate, independent of treaty stipulations, as the dominion acquired by one power from another over an inhabited country, can never divest the vested rights of individuals to property. Delassus vs. U. S., 9 Peters 117; Chouteau vs. U. S., 9 Peters 137.

LEONARD & HAYDEN, for defendants in error.

1. The Spanish concession is neither a legal title, nor such a title under our statute as will support an action of ejectment.

2. Upon this record the Chouteau title commences, as against the defendant in error, with the confirmation; and the confirmation, by the act of July, 1836, as against the defendant, does not establish the existence of any prior claim.

3. If the existence of a genuine Spanish order of survey be assumed, as against the de-defendant in error, all claim under it was barred by the acts of Congress.

4. If the existence of such order of survey shall be assumed as against the defendant in error, it, as well as the confirmation of it, are expressly postponed to the defendant's title, by said act of confirmation relied upon by plaintiffs, independent of the statutory bars above alluded to.

5. The patent issued and read in favor of the plaintiffs is void because issued without any authority of law.

6. There is no evidence in the cause showing that the Chouteau claim was embraced in the act of Congress of July, 1836, relied upon by plaintiffs.

7. The patents and patent certificate relied upon by defendant in his defence to this action, are a good bar in law and equity as against the plaintiff's right of recovery.

8. The land located by the defendant was not, at the time of the location, reserved from sale in such manner as to invalidate the location of his New Madrid claim thereon. See Lewis Bissell, pl'ff in error, vs. Mary B. Penrose, decided Dec. term, 1849.

NAPTON, J., delivered the opinion of the court.

These cases have been before this court for some time, awaiting the

54

ultimate determination of the Supreme Court of the United States upon the construction of the 2nd section of the act of Congress of July 4, 1836. That decision is supposed to have been finally made in the case of Bissell vs. Penrose, and upon that opinion these cases turn.

A very brief statement of facts will be sufficient to show the point upon which these cases turn.

In 1799, Chouteau presented a petition to Delassus for 30,000 arpents "60 miles below [above] the Osage, on the south side of the Missouri river"—in which quantity should be comprised the river a La Mine, and also the salt springs, which he designed to work at a time when he could do so in safety. This petition was granted, and Chouteau was directed to have it surveyed when convenient to his interests.

This claim was duly filed with the Recorder, and was before the Board of Commissioners in 1811, and was finally recommended for confirmation by the last Board, and consequently confirmed by the act of July 4, 1836.

There was no survey of the claim until 1837. The defendants held under New Madrid locations.

It is obvious that if Chouteau's claim be of such a nature as operated to reserve a specific tract of land by virtue of the act of Congress of 1811, the New Madrid locations upon it cannot avail the defendants.

In the case of Bissell vs. Penrose, it is clearly intimated that the claims reserved by the act of 1811, were such as had a fixed locality or could be reduced to a certainty by a survey. Surveys were deemed necessary in two classes of concessions. "1. A grant or order of survey for a given number of arpents, conferring upon the grantee the right to locate it upon any part of the royal domain, at his election. 2. A grant designating some national object only, such as the head or sources of a river, as a place where the tract should be located." The concession to Chouteau was of the latter description; it was to be located at the mouth of the La Mine, so as to embrace certain salt springs and the river. But the concession cannot, on the most favorable construction, be regarded as designating a specific tract of land. A surveyor could lay it off in a hundred different shapes, so as to answer every call in the grant. This being the condition of the claim at the time the New Madrid locations were made, the latter cannot be regarded as conflicting with any reservation under the act of 1811.

We understand the cases of Bissell vs. Penrose, and Massey vs. Cerre, as determining these cases in favor of the New Madrid locators. The judgments of the circuit court are therefore affirmed.